IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
April 25, 2025
LAURA A. AUSTIN, CLERK
BY s/ S. MELVIN
DEPUTY CLERK

|  |  |
|---|---|
| JOSE CECILIO CHICAS RAMIREZ, ) | |
| *Plaintiff*, ) | |
| v.           ) | Case No. 3:25-cv-00028 |
| ) | |
| RIVER CITY RECOVERY, LLC, ) | |
| TRUIST BANK, ) | |
| WESTLAKE FINANCIAL SERVICES, ) | |
| PERUVIAN MOTOR SALES, INC., ) | |
| *Defendants*. ) | |

## COMPLAINT

COMES NOW the Plaintiff by counsel and makes the following allegations in support of his Complaint:

### PRELIMINARY STATEMENT

1. This is an action seeking damages to make a consumer whole who suffered abuse at the hands of the entities that sold, financed, and repossessed his car.

### JURISDICTION AND VENUE

2. The Fair Debt Collection Practices Act ("FDCPA") is a federal statute giving this Court original jurisdiction of this matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

3. The Truth in Lending Act ("TILA") is a federal statute enacted for the purpose of regulating trade and commerce. This Court has original jurisdiction of this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1337.

4. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

6. Plaintiff Jose Cecilio Chicas Ramirez ("Mr. Ramirez") is a natural person who resides in the city of Ruckersville, Virginia. Mr. Ramirez purchased a car primarily for personal, family, and household use, and is a consumer within the meaning of the FDCPA, 15 U.S.C. § 1692a(3).

7. Defendant River City Recovery, LLC, ("River City"), is a Virginia corporation that can be served on its registered agent, William H. Dougherty, at 2500 Austin Lane, Henrico, VA, 23223. Defendant River City is in the vehicle towing and recovery business.

8. Defendant Truist Bank, ("Truist"), is a finance and banking company headquartered at 214 N Tryon St, Charlotte, NC, 28202. It can be served on its registered agent Corporation Service Company, located at 100 Shockoe Slip, Fl 2, Richmond, VA 23219.

9. Defendant Westlake Financial Services, ("Westlake"), is a finance company headquartered 4751 Wilshire Blvd. #100, Los Angeles, CA 90010. It can be served on its registered agent, Corporate Creations Network Inc., at 425 W Washington St. Ste 4, Suffolk, VA, 23434.

10. Defendant Peruvian Motor Sales, Inc., ("Peruvian"), is a Virginia corporation whose principal place of business is in Warrenton, Virginia. Peruvian can be served on its registered agent, Walter Jimenez Guardia, at 6555 Commerce Ct., Warrenton, VA 20187. Peruvian is a used car dealership, and upon information and belief, in the course of its business it assigns retail installment sales contracts to Defendant Westlake.

## FACTS

*The Sale Documents*

11. On May 5, 2024, Plaintiff Mr. Ramirez traveled to Defendant Peruvian's place of business in Warrenton, VA, to purchase a car for his nephew, Fernando Rafael Garcia Mendoza ("Mr. Garcia"). Mr. Garcia is not a party to this case.

12. Mr. Ramirez entered into a Buyer's Order, dated May 5, 2024, to purchase a 2017 Toyota Camry ("the Toyota" or "the vehicle"), VIN #4T1BF1FK9HU765665, from Peruvian. A copy of the Buyer's Order is attached as Exhibit A.

13. The Buyer's Order required Mr. Ramirez to pay Peruvian a total down payment of $1,700.00.

14. The Buyer's Order indicated a cash price of the vehicle of $16,149.00. It did not include sales tax, which pursuant Va. Code § 58.1-2401(1) would be 4.15% of the sales price, or $670.18.

15. On May 5, 2024, Mr. Ramirez made a down payment of $1,700.00 cash to Peruvian.

16. The receipt Mr. Ramirez received from Peruvian indicating the $1,700.00 cash down payment is attached as Exhibit B.

17. The receipt indicates that Mr. Ramirez's amount due on the Toyota was $14,821.94. No sales tax was listed on the buyer's order. It is unclear how this number was calculated.

18. Mr. Ramirez signed a Retail Installment Sales Contract ("RISC"), dated May 6, 2024. The RISC is attached as Exhibit C.

19. The RISC overstated the cash price of the vehicle as $18,719.92, including a commensurately overstated $787.70 in sales tax. The RISC also overstated a cash down payment of $5,950.00.

20. Based on these incorrect inputs, the RISC also overstated the amount financed as $15,382.93 and understated both the finance charge as $7,249.42 and the annual percentage rate (APR) as 15.1%.

21. Both the cash price and the down payment amount stated in the RISC were different from what Peruvian had indicated on the Buyer's Order and what Mr. Ramirez actually paid to Peruvian at the time he signed the RISC.

22. Peruvian informed Mr. Ramirez that the RISC needed to display $5,950.00 as the cash payment amount for paperwork purposes.

3

23. Peruvian orally represented to Mr. Ramirez that he did not owe any additional money on the Toyota as a result of the difference in the actual cash downpayment amount he made to Peruvian and the listed cash payment amount on the RISC.

24. The RISC required Mr. Ramirez to pay $348.19 for 65 months, beginning May 8, 2024.

25. By the terms of the RISC, the contract and security agreement would be assigned to Defendant Westlake.

26. The assignment to Westlake is attached as Exhibit D.

27. A confirmation of Westlake as the lienholder is attached as Exhibit E.

28. At the time Peruvian obtained title for the Toyota, the Virginia Department of Motor Vehicles Certificate of Title show no existing liens on the vehicle. Peruvian's Certificate of Title is attached as Exhibit F.

29. The Toyota was registered in Mr. Ramirez's name with the Virginia Department of Motor Vehicles. The registration is attached as Exhibit G.

*The Repossession*

30. Although the Toyota was registered in Mr. Ramirez's name, Mr. Ramirez had purchased the Toyota for his nephew, Mr. Garcia, to drive for personal use.

31. Mr. Ramirez and his nephew had agreed that Mr. Garcia would make the monthly payments of $348.19 to Westlake in accordance with the RISC.

32. Mr. Garcia faithfully made payments to Westlake in accordance with the RISC.

33. On October 22, 2024, an agent of Defendant River City ("the repo man") arrived at Mr. Garcia's home late at night after he had come home from work. The Toyota was parked on the road outside of Mr. Garcia's home.

34. Mr. Garcia asked the repo man why they were there. The repo man told Mr. Garcia he had been hired to repossess the Toyota on behalf of the lienholder Truist.

35. The repo man identified the borrower in default as an individual unknown to Mr. Garcia (i.e. not Mr. Ramirez).

36. Mr. Garcia requested the documentation for the possession order. The repo man told Mr. Garcia they could not provide him with the documents.

37. The repo man ignored Mr. Garcia's protests that the Toyota was owned by Mr. Ramirez, that the loan was in good standing, and that the current lienholder was Westlake, not Truist.

4

38. On October 22, 2024, River City took repossession of the Toyota.
39. At the time the Toyota was repossessed, it had personal items that belonged to Mr. Garcia inside.
40. Mr. Garcia called the police the day after the Toyota was repossessed, and they told him to contact his bank.
41. Mr. Garcia has confirmed with Westlake that the loan was in good standing at the time River City took possession of the Toyota.
42. In the weeks following River City taking possession of the Toyota, both Mr. Ramirez and Mr. Garcia made frequent attempts to contact River City about the current status of the loan.
43. River City continued to ignore these communications from Mr. Ramirez and Mr. Garcia, stating that they needed certain documentation from Westlake before they could release the Toyota.
44. In the weeks following River City taking possession of the Toyota, Mr. Ramirez made almost daily attempts to contact Westlake about the repossession.
45. Westlake repeatedly informed Mr. Ramirez that they would be in contact with River City, however, neither Mr. Ramirez nor Mr. Garcia received an update from either Westlake or River City as to the status of the Toyota.
46. Mr. Garcia has spoken to a Westlake representative several times. The representatives have given Mr. Garcia unclear or conflicting information.
47. In December 2024, Westlake charged a fee of $125 to Mr. Garcia's account. See Exhibit H.
48. Mr. Garcia called Westlake to ask about the fee. The Westlake representative informed him that they ordered the repossession and now were charging him for it because the Toyota had been returned to his possession.
49. The Toyota was never returned to Mr. Ramirez's possession.
50. Mr. Garcia tried calling Truist to inquire about the repossession of the Toyota. He gave them his name and information about the Toyota, but the Truist representative said they had no information on the Toyota.
51. As a result of the conflicting communications that they have received from Westlake, as well as their inability to communicate with Truist, Mr. Ramirez and Mr. Garcia are

unsure as of the date of this filing whether the repossession was ordered by Westlake or Truist.

52. Per an email sent to Plaintiff's counsel by an agent of Defendant River City's insurance carrier, SunTrust Bank, Truist's precursor entity, had a lien on the title.

53. As of the date of this filing, neither Mr. Ramirez nor Mr. Garcia have possession of the Toyota.

54. Per a phone call between Plaintiff's counsel and an agent of Defendant River City's insurance carrier, the Toyota was sold at auction on November 7, 2024.

55. Even though neither Mr. Ramirez nor Mr. Garcia have possession of the Toyota, Mr. Garcia continued to make the monthly payments on the loan to Westlake through January 2025.

Causes of Action:

Count 1: Violation of the Fair Debt Collection Practices Act
Defendant River City

56. Mr. Ramirez re-asserts and re-alleges paragraphs 1-55.

57. The repossession on October 22, 2024, was a collection activity arising from a consumer debt as those terms are defined in the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a.

58. The FDCPA broadens the definition of "debt collector" with respect to 15 U.S.C. § 1692f(6) to include repossession agents.

59. 15 U.S.C. § 1692a(6) provides in pertinent part:

> For the purpose of section 1692f(6) of this title, [debt collector] also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

60. As a vehicle recovery and towing operator, Defendant River City uses an instrumentality of interstate commerce or mails in a business whose principal purpose is the enforcement of security interests.

61. Accordingly, River City is a debt collector for the purpose of 15 U.S.C. § 1692f(6).

62. 15 U.S.C. § 1692f(6)(A) makes it unlawful for a debt collector to take nonjudicial action to effect dispossession of property if "there is no present right to the possession of the property claimed as collateral through an enforceable security interest."
63. Assuming Defendant Westlake ordered River City to repossess the Toyota, River City had no present right to the possession of the Toyota because Mr. Ramirez was current on his loan.
64. For the purposes of 15 U.S.C. § 1692f(6)(A), a "present right to the possession of property claimed as collateral through an enforceable security interest" is determined by state law.
65. In Virginia, licensees have the right to repossess a vehicle only upon default of the borrower. Va. Code § 6.2-2117.
66. As of October 22, 2024, Mr. Ramirez was not in default on his loan agreement with Westlake.
67. Because Mr. Ramirez was not in default, Westlake did not have a present right to enforce its underlying security interest via possession of the car under Virginia law.
68. Accordingly, if the repossession was ordered by Westlake, Defendant River City violated 15 U.S.C. § 1692f(6)(A) of the FDCPA when it took possession of Mr. Ramirez's vehicle without a predicate default, a condition precedent to enforcing a security interest.
69. In the alternative, if Truist ordered River City to repossess the Toyota, River City had no present right to the possession of the Toyota on October 22, 2024.
70. Under Va. Code § 46.2-640, a security interest "shown upon such certificates of title issued by the Department pursuant to applications for same shall have priority over any other liens or security interests against such motor vehicle . . . however created and recorded."
71. Because Truist was not listed as a lienholder on the title of the Toyota, Truist did not have enforceable security interest in the underlying collateral and was not a secured party as the term is defined under Virginia law. Va. Code § 8.9A-102(a)(73).
72. Accordingly, if the repossession was ordered by Truist, Defendant River City violated 15 U.S.C. § 1692f(6)(A) of the FDCPA when it took possession of Mr. Ramirez's

7

vehicle, because the repossession was not ordered by Truist pursuant to an enforceable security interest.

73. Whether Defendant Westlake or Defendant Truist ordered the repossession, Defendant River City is liable to Plaintiffs for actual damages and statutory damages pursuant to the FDCPA. 15 U.S.C. § 1692k.

Count 2: Unlawful Repossession Under the Uniform Commercial Code
Defendant Westlake or, in the alternative, Truist

74. Mr. Ramirez re-asserts and re-alleges paragraphs 1-55.

75. The transaction between Mr. Ramirez and Defendant Westlake, or in the alternative Defendant Truist, is subject to Article 9A of the Uniform Commercial Code, which is codified in Va. Code § 8.9A.

76. A "secured party" is defined in state law as "a person in whose favor a security interest is created or provided for under a security agreement." Va. Code § 8.9A-102(a)(73).

77. Defendant Westlake is a secured party whose security interest was created in accordance with the terms of the RISC agreement. See Exhibit C.

78. Va. Code. § 8.9A-609(a) authorizes a secured party to engage in self-help repossession and take possession of the collateral "after default." "Typically, a secured creditor may not take possession of the collateral until the debtor defaults." *Padin v. Oyster Point Dodge*, 397 F. Supp. 2d 712, 725 (E.D. Va. 2005).

79. Mr. Ramirez was not in default at the time of the October 22, 2024 repossession.

80. If Defendant Westlake ordered the October 22, 2024 repossession, it violated the self-help provision of §8.9A when it took possession of the Toyota when Mr. Ramirez was not in default on the payments required by the loan agreement.

81. If, in the alternative, Defendant Truist ordered the October 22, 2024 repossession, it violated the self-help provision of § 8.9A when it took possession of the Toyota because it did not have an enforceable security interest in the vehicle as provided for by Virginia law.

82. Defendant Westlake, or in the alternative Defendant Truist, is liable to Plaintiff for actual and statutory damages pursuant to the UCC. Va. Code § 8.9A-625.

<u>Count 3: Conversion</u>
<u>Defendants River City and Westlake or, in the alternative, Defendants River City and Truist</u>

83. Mr. Ramirez re-asserts and re-alleges paragraphs 1-55.

84. At the time the Toyota was repossessed, Mr. Ramirez was current on the loan payments to Westlake.

85. In Virginia, the tort of conversion "encompasses 'any wrongful exercise or assumption of authority over another's goods, depriving him of their possession; and any act of dominion wrongfully exerted over property in denial of the owner's right, or inconsistent with it.'" *United Leasing Corp. v. Thrift Ins. Corp.*, 440 S.E.2d 902 (Va. 1994) (*quoting Universal C.I.T. Credit Corp. v. Kaplan*, 92 S.E.2d 359 (Va. 1956)) (alterations omitted).

86. In Virginia "a properly asserted claim for conversion will show '1) the ownership or right to possession of the property at the time of the conversion and 2) the wrongful exercise of dominion or control by the defendant over the plaintiff's property, thus depriving plaintiff of possession.'" *Shelton v. Marshall*, 724 F. Supp. 3d 532, 545 (W.D. Va. 2024) (*quoting Adkins v. Crown Auto, Inc*., 2005 WL 1278948, at *4 (W.D. Va. May 27, 2005)).

87. If Defendant Westlake held a valid security interest with priority under Virginia law and ordered River City to conduct the repossession, neither River City nor Westlake had the right to seize and withhold the Toyota.

88. Westlake and River City engaged in wrongful exercise of control over the Toyota because Mr. Ramirez was not in default on the monthly loan payments at the time of repossession.

89. Defendants Westlake and River City wrongfully deprived Mr. Ramirez of possession of his goods when they repossessed his vehicle on October 22, 2024.

90. Defendants Westlake and River City acted with conscious disregard for Mr. Ramirez's rights when they repossessed his vehicle on October 22, 2024.

91. Accordingly, if Defendant Westlake ordered the repossession, Westlake and River City committed the tort of conversion by seizing and continuing to hold the Toyota.

92. In the alternative, if Defendant Westlake held a valid security interest with priority under Virginia law and Truist ordered River City to conduct the repossession, neither River City nor Truist had the right to seize and withhold the Toyota.

93. Truist and River City engaged in the wrongful exercise of control over the Toyota because Truist did not hold title to the Toyota and was not a secured creditor with an enforceable security interest in the Toyota.

94. Defendants Truist and River City wrongfully deprived Mr. Ramirez of possession of his goods when they repossessed his vehicle on October 22, 2024.

95. Defendants Truist and River City acted with conscious disregard for Mr. Ramirez's rights when they repossessed his vehicle on October 22, 2024.

96. Accordingly, if Defendant Truist did not have an enforceable security interest in the underlying collateral and ordered the repossession, Truist and River City committed the tort of conversion by seizing and continuing to hold the Toyota.

Count 4: Violation of the Virginia Consumer Protection Act
Defendant River City

97. Mr. Ramirez re-asserts and re-alleges paragraphs 1-55.

98. The Virginia Consumer Protection Act ("VCPA") defines a "supplier" as "a seller, lessor, licensor, or professional who advertises, solicits, or engages in consumer transactions, or a manufacturer, distributor, or licensor who advertises and sells, leases, or licenses goods or services to be resold, leased, or sublicensed by other persons in consumer transactions."

99. The VCPA defines "services," in pertinent part, as including, but not limited to:

> (i) work performed in the business or occupation of the supplier, (ii) work performed for the supplier by an agent whose charges or costs for such work are transferred by the supplier to the consumer or purchaser as an element of the consumer transaction.

Va. Code § 59.1-198.

100. Defendant River City is a "supplier" of "services" under the definitions provided by the VCPA because it is a supplier that engages in consumer transactions in the form of towing and vehicle storage.

101. The VCPA defines a "consumer transaction," in pertinent part, as "[t]he advertisement, sale, lease, license or offering for sale, lease or license, of goods or services to be used primarily for personal, family or household purposes." Va. Code § 59.1-198.

102. Mr. Ramirez and Mr. Garcia used the Toyota primarily for personal, family, or household purposes.

103. The towing of a consumer vehicle has been held to qualify as a "commercial transaction" subject to the VCPA, even if the towing was arranged by a non-consumer. See *Daughtry v. Gray's Body Shop, Inc.*, 79 Va. Cir. 539 (2009).

104. The towing and subsequent interactions with Defendant River City are therefore a consumer transaction within the scope of the VCPA.

105. If Defendant River City was ordered to repossess the vehicle on behalf of Defendant Westlake, then River City misrepresented their presence to Mr. Garcia as being on behalf of Defendant Truist.

106. Additionally, Defendant River City made misrepresentations to Mr. Garcia that it had a present right to repossess the Toyota when, regardless of which Defendant ordered the repossession, it in fact it had no such right to possession.

107. This misrepresentation is a violation of Va. Code § 59-200(A)(14), which makes unlawful the use of "any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction."

108. If this misrepresentation was willful, Mr. Ramirez is entitled to damages equal to or up to three times the actual damages sustained or $1,000, whichever is greater.

109. If, in the alternative, this misrepresentation was negligent, Mr. Ramirez is entitled to actual damages or $500, whichever is greater.

Count 5: Violation of the Truth in Lending Act
Defendant Peruvian

110. Mr. Ramirez re-asserts and re-alleges paragraphs 1-55.

111. Mr. Ramirez and Defendant Peruvian entered into a consumer credit transaction subject to the requirements of the Federal Truth in Lending Act, 15 U.S.C. § 1632 *et seq.* ("TILA"). TILA is further explained by Regulation Z, 12 C.F.R. §226.01 *et seq.*

112. Upon information and belief and at all times relevant hereto, in the ordinary course of its business, Defendant Peruvian regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments and was initially payable to Defendant, making Defendant a creditor within the meaning of the Truth in Lending Act and Regulation Z. 15 U.S.C. § 1602(g); 12 C.F.R. § 226.2(a)(17).

113. Pursuant to TILA, as a "creditor" who extended credit to Mr. Ramirez, Peruvian was required to accurately provide certain disclosures to Mr. Ramirez. 15 U.S.C. § 1638. Peruvian was required to disclose the "amount financed," (a)(2)(A), calculated by "tak[ing] the principal amount of the loan or the cash price less downpayment and trade-in." 15 U.S.C. § 1638(a)(2)(A)(i); 12 C.F.R. § 226.18.

114. 15 U.S.C. § 1605(a) provides in pertinent part:

> Except as otherwise provided in this section, the amount of the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit.

115. Peruvian disclosed the $787.70 sales tax as part of the "cash price of the vehicle" in its itemization of the amount financed in the RISC. This was calculated by multiplying the total base price of the Toyota by the automobile sales tax rate of 4.15 percent. See Exhibit C.

116. Peruvian should have calculated the sales tax by multiplying the total cash price of the Toyota by the automobile sales tax rate of 4.15 percent.

117. However, $172.23 of this amount was not sales tax at all. This was the amount charged on the difference between the sales tax paid on the down payment amount total cash price as listed on the RISC, which incorrectly reflected a downpayment of $5,850.00, and what the sales tax should have been based on the actual sales price, which reflected of $5,850.00 and the actual downpayment amount Mr. Ramirez paid to Peruvian of $1,700.00. See Exhibits A, C.

12

118. Of the $787.70 disclosed as sales tax on the RISC, $172.23 was simply an improperly disclosed finance charge imposed by Peruvian in connection with the loan of $15,382.93.

119. Pursuant to TILA, Peruvian should have disclosed this $172.23 as part of the finance charge, rather than the amount financed.

120. Peruvian violated TILA and Regulation Z with respect to the financed purchase of the Toyota by under-disclosing the finance charge by $172.23 and over-disclosing the amount financed by this same amount.

121. Peruvian inaccurately disclosed the amount financed to Mr. Ramirez.

122. These inflated values resulted in an overstated the amount financed on the RISC as $15,382.93.

123. These same inflated inputs resulted in the RISC understating both the finance charge as $7,249.42 and the APR as 15.1%.

124. Peruvian violated TILA and Regulation Z with respect to the financed purchase of the Toyota by under disclosing the finance charge, understating the APR and overstating the sales tax.

125. Westlake is liable to Mr. Ramirez under TILA pursuant to the FTC holder rule. 16 C.F.R. § 433.2.

<u>Count 6: Violation of the Virginia Consumer Protection Act</u>
<u>Defendant Peruvian</u>

126. Mr. Ramirez re-asserts and re-alleges Paragraphs 1-55.

127. Defendant Peruvian is a "supplier" and the transaction between Peruvian and Mr. Ramirez described herein is a "consumer transaction" as those terms are defined in the VCPA. Va. Code § 59.1-198.

128. Peruvian was prohibited by the VCPA from "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Va. Code § 59.1-200(A)(14).

129. On the Buyer's Order, Peruvian indicated that the "cash price" of the Toyota was $16,149.00 and that the "total down payment" made by Mr. Ramirez was $1,700. See Exhibit A.

13

130. On the RISC, Peruvian indicated that the "cash price" of the Toyota was $18,719.93 and that the "down payment" made by Mr. Ramirez was $5,950.00. See Exhibit C.

131. Peruvian told Mr. Ramirez at the time he signed the RISC that they were indicating a different down payment amount for paperwork purposes and that he did not owe any additional money on the Toyota. Upon information and belief, Peruvian did not inform Mr. Ramirez of the increased cash price listed on the RISC.

132. Peruvian committed a deception, fraud, false pretense, false promise, or misrepresentation when it indicated the cash price as $16,149.00 on the Buyer's Order but increased the cash price to $18,719.93 on the RISC.

133. Peruvian committed a deception, fraud, false pretense, false promise, or misrepresentation when it indicated a downpayment amount of the $5,950 despite having knowledge that Mr. Ramirez had only paid $1,700 as a cash downpayment.

134. Accordingly, Defendant Peruvian violated Va. Code § 59.1-200(A)(14).

135. Mr. Ramirez relied upon the misrepresentation of Peruvian of the cash price of the vehicle and the total downpayment amount paid in his purchase of the Toyota. As a result of this reliance, Mr. Ramirez suffered a loss of $172.23. This $172.23 represents the additional amount of sales tax paid as a result of the infated cash downpayment amount.

136. Upon information and belief, Peruvian willfully and intentionally committed these violations.

137. In the alternative of willful and intentional violations, Peruvian was negligent in committing these violations. These violations do not qualify as a bona fide error under Va. Code § 59.1-207.

138. For each intentional or willful violation of the VCPA, Mr. Ramirez is entitled to recover triple the actual damages, or $1,000, whichever is greater, and reasonable attorney fees and court costs, pursuant to Va. Code § 59.1-204. In the alternative, for each unintentional violation, Mr. Ramirez is entitled to recover actual damages, or $500, whichever is greater, and reasonable attorneys' fees and court costs, pursuant to Va. Code § 59.1-204.

139. As a result of this misrepresentation, Mr. Ramirez sustained the damages detailed herein.

140. If Defendant Westlake is the holder of a valid security interest in the Retail Installment Sales Contract, Westlake is liable to Mr. Ramirez under the VCPA pursuant to the FTC holder rule. 16 C.F.R. § 433.2.

### Count 7: Violation of the Virginia Consumer Protection Act
### Defendant Peruvian

141. Mr. Ramirez re-asserts and re-alleges Paragraphs 1-55.

142. In the alternative, if Defendant Truist was the holder of a valid security interest in the Toyota at the time that Peruvian sold it to Mr. Ramirez, then Peruvian's assertions to him that there were no issues with or existing liens on the title at the time of the sale are additional misrepresentations under Va. Code § 59.1-200(A)(14).

143. If Peruvian was aware of Truist's security interest in the Toyota, then these misrepresentations are willful and intentional violations of Va. Code § 59.1-200(A)(14).

144. In the alternative, if Peruvian was unaware of Truist's security interest in the Toyota, then these misrepresentations are negligent violations of Va. Code § 59.1-200(A)(14).

145. As a result of this misrepresentation, whether willful or negligent, Mr. Ramirez sustained the damages detailed herein.

### Count 8: Breach of Warranty of Title Under the Uniform Commercial Code
### Defendant Peruvian

146. Mr. Ramirez re-asserts and re-alleges paragraphs 1-55.

147. In the alternative, if Defendant Truist held a valid title to the Toyota or a valid lien against the Toyota as recognized under Virginia law, or if there was a cloud on the title, then Peruvian breached the warranty of good title by presenting title in its own name without liens.

148. The Buyer's Order represents a contract of sale for the Toyota, which brings the transaction within the protection of Va. Code § 8.2-312.

149. Pursuant to this Code section, a contract for sale includes a warranty that the title conveyed is good and that the goods are "free from any security interest or lien or

15

encumbrance of which the buyer at the time of contracting has no knowledge." Va. Code § 8.2-312.

150. Peruvian did not specifically disclaim warranty of title at any time or in any writing, nor did Mr. Ramirez waive warranty of title at any time or in any writing.

151. Through his attorney, Mr. Ramirez has notified Peruvian of the breach of warranty pursuant to Va. Code § 8.2-607(3)(a). Exhibit I.

152. Mr. Ramirez is therefore entitled to recover for breach of warranty "the difference . . . between the value of the goods accepted and the value they would have had if they had been warranted" from Peruvian. Va. Code § 8.2-714(2).

WHEREFORE Mr. Ramirez by counsel respectfully prays this honorable court to award him the following relief:

1. Defendant River City Recovery, LLC;
    a. Statutory Damages in the amount of $1,000 pursuant to the Fair Debt Collections Practices Act, 15 U.S.C. § 1692k(a)(2)(A);
    b. Costs and Reasonable attorney's fees pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k(a)(3);
    c. Actual damages, and punitive damages pursuant to the law of the Commonwealth of Virginia against conversion;
    d. $1,000 or treble actual damages, whichever is greater, for each willful violation of the Virginia Consumer Protection Act. Va. Code §59.1-204(A);
    e. $500 or actual damages, whichever is greater, for each non-willful violation of the Virginia Consumer Protection Act. Va. Code §59.1-204(A); and
    f. Reasonable attorney's fees and costs.
2. Defendant Truist Bank;
    a. If Defendant Truist ordered the repossession, actual damages or the minimum statutory damages pursuant to the Uniform Commercial Code in the amount of the finance charge plus ten percent of his principal obligation. Va. Code § 8.9A-625(c)(2);

  b. If Defendant Truist ordered the repossession, actual damages, and punitive damages pursuant to the law of the Commonwealth of Virginia against conversion; and

  c. Reasonable attorney's fees and costs.

3. <u>Defendant Westlake Financial Services;</u>

  a. If Defendant Westlake ordered the repossession, actual damages or the minimum statutory damages pursuant to the Uniform Commercial Code in the amount of the finance charge plus ten percent of his principal obligation. Va. Code § 8.9A-625(c)(2);

  b. If Defendant Westlake ordered the repossession, actual damages, and punitive damages pursuant to the law of the Commonwealth of Virginia against conversion; and

  c. Reasonable attorney's fees and costs.

4. <u>Defendant Peruvian Motors Sales, Inc.;</u>

  a. $172.23 in actual damages sustained for violation of the Federal Truth in Lending Act. 15 U.S.C. § 1640(a)(1), plus statutory damages of up to $2,000 pursuant to 15 U.S.C. § 1640(a)(2);

  b. $1,000 or treble actual damages, whichever is greater, for each willful violation of the Virginia Consumer Protection Act. Va. Code §59.1-204(A);

  c. $500 or actual damages, whichever is greater, for each non-willful violation of the Virginia Consumer Protection Act. Va. Code §59.1-204(A);

  d. The difference at the time and place of acceptance between the value of the Toyota accepted and the value it would have had if it had been as warranted. Va. Code § 8.2-714(2); and

  e. Reasonable attorney's fees and costs.

By:
LEGAL AID JUSTICE CENTER


By: __/s/_____
Caroline Klosko, VSB# 78699

Legal Aid Justice Center

1000 Preston Ave, Suite A

Charlottesville, Virginia 22903

(434) 977-0553

carrie@justice4all.org

*Counsel for the Plaintiff*