CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

**April 07, 2026**

LAURA A. AUSTIN, CLERK
BY:  s/ D. AUDIA
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| Jose Cecilio Chicas Ramirez, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:25-cv-00028 |
| | ) | |
| Peruvian Motor Sales, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION</u>**

This matter is before the court on Plaintiff Jose Cecilio Chicas Ramirez's ("Ramirez")

motion for default judgment against Defendant Peruvian Motor Sales, Inc. ("Peruvian").

(Dkt. 50.)  Ramirez claims Peruvian violated the Truth in Lending Act (TILA) and the Virginia

Consumer Protection Act (VCPA) by misstating several charges on financing documents

connected to the purchase of a 2017 Toyota Camry in May 2024.

The Clerk entered default as to Peruvian in June 2025, (Dkt. 22), and Ramirez now

moves for default judgment.  For the reasons outlined below, the court will grant Ramirez's

motion.

## I.    Background

On May 5, 2024, Ramirez traveled to Peruvian's dealership in Warrenton, VA to

purchase a car for his nephew.  (Am. Compl. ¶ 10 (Dkt. 14)[1].)  Ramirez decided on a 2017

Toyota Camry and signed a Buyer's Order setting the terms of the sale.  (*Id.* ¶ 11; Buyer's

---

[1] The court cites to Ramirez's amended complaint at Dkt. 14, which includes the exhibits as attachments, instead of Dkt. 12.

Order (Dkt. 14-1).)  The Buyer's Order required Ramirez to make a down payment of $1,700 to purchase the car, which he paid up front to Peruvian.  (Am. Compl. ¶¶ 12, 14–15; Down Payment Receipt (Dkt. 14-2).)  The Buyer's Order also listed a vehicle price of $15,900, a processing fee of $249, a title fee of $15, and a documentation fee of $20, bringing the total due for Ramirez to $16,184.  (Buyer's Order.)  After the down payment of $1,700, the Buyer's Order listed a "Balance Due" of $14,484.  (*Id.*)  The down payment receipt, though, did not match this balance.  Underneath the $1,700 "Amount Received," the "Amount Due" listed $14,821.94—a $337.94 discrepancy from the Buyer's Order.  (Down Payment Receipt.) According to Ramirez, it is "unclear how [the $14,821.94 balance] was calculated."  (Am. Compl. ¶ 16.)

To finance the remaining balance, Ramirez signed a Retail Installment Contract and Security Agreement ("RICSA") dated May 6, 2024.  (*Id.* ¶ 17; RICSA (Dkt. 14-3).)  The RICSA listed a down payment of $5,950 and a vehicle cash price of $18,719.93, which included a sales tax of $787.70.  (RICSA at 2–3.)  The vehicle cash price and the down payment listed on the RICSA did not match the same listed on the Buyer's Order.  (Am. Compl. ¶ 20.)  Peruvian informed Ramirez that the RICSA needed to list $5,950 for the down payment—instead of the $1,700 he paid—for "paperwork purposes."  (*Id.* ¶ 21.)  Peruvian reassured Ramirez that he did not owe any additional money on the car because of the intentional discrepancy.  (*Id.* ¶ 22.)  The RICSA also listed a "Finance Charge" of $7,249.42, an Annual Percentage Rate (APR) of 15.10%, and an "Amount Financed" of $15,382.93, along with various fees.  (RICSA at 2–3.)

Ramirez filed his complaint against Peruvian and three other defendants on April 25, 2025.[2]  (Dkt. 1.)  Peruvian was served with the complaint on May 5, 2025.  (*See* Dkt. 20-2.)  Ramirez filed an amended complaint as of right on May 19, 2025.  (Am. Compl.)  After Peruvian failed to appear or file a responsive pleading, Ramirez moved for a clerk's entry of default against Peruvian on June 16, 2025.  (Dkt. 20.)  The Clerk entered default the following day.[3]  (Dkt. 22.)  Ramirez filed the instant motion for default judgment against Peruvian on December 23, 2025.  (Dkt. 50.)

## II.    Standard of Review

Federal Rule of Civil Procedure 55 "authorizes the entry of a default judgment when a defendant fails 'to plead or otherwise defend' in accordance with the Rules."  *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982).  Rule 55 creates a two-step process for entry of default judgment.  First, the non-defaulting party must move for entry of default under Rule 55(a).  *See* Fed. R. Civ. P. 55(a).  The Clerk's interlocutory entry of default pursuant to Rule 55(a) "provides notice to the defaulting party prior to the entry of default judgment by the court."  *Hummel v. Hall*, 868 F. Supp. 2d 543, 547 (W.D. Va. 2012).  Once default has been entered, the non-defaulting party may then move for entry of default judgment under Rule 55(b).  *Id.*

---

[2] Ramirez's claims against the other defendants have been voluntarily dismissed and are not related to this motion before the court.

[3] The Clerk's entry appears to apply to the original complaint.  (*See* Dkt. 22.)  Although the amended complaint, (Dkt. 14), is the operative complaint for Ramirez's motion for default judgment, the allegations as to Peruvian in the amended complaint are unchanged from the original complaint.  *See Jindal v. Stanley Cap. Mortg.*, No. 1:10-cv-01142, 2012 WL 6962090, at *2 n.1 (E.D. Va. Dec. 20, 2012).  A plaintiff is not required to serve an amended complaint on a party who is in default for failing to appear if the amended complaint does not assert a new claim against the defaulted party.  *See* Fed. R. Civ. P. 5(a)(2).

In evaluating a motion for default judgment, the court must decide whether the complaint's well-pleaded allegations "support the relief sought." *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). By his default, the defendant "admits the plaintiff's well-pleaded allegations of fact" but is not held to "admit conclusions of law." *FTC v. Pukke*, 53 F.4th 80, 107 (4th Cir. 2022) (quoting *Ryan*, 253 F.3d at 780). Nor is the defendant held to admit the sum of damages alleged in the complaint. *See Fleisher v. How2Connnect.com*, No. 3:14-cv-00045, 2015 WL 1925426, at *3 (W.D. Va. Apr. 28, 2015) ("While Plaintiff's factual averments must be taken as true, his assessment of the damages need not be."); Fed. R. Civ. P. 8(b)(6).

When reviewing motions for default judgment, this court considers several factors, including:

> (1) whether there is a large amount of money involved in the litigation; (2) whether there are material issues of fact in the case needing resolution; (3) whether the case involves issues of great public importance; (4) whether the grounds for the motion for a default judgment are highly technical; (5) whether the party asking for a default judgment has been prejudiced by the non-moving party's actions or omissions; (6) whether the actions or omissions giving rise to the motion for a default judgment are the result of a good-faith mistake on the part of the non-moving party; (7) whether the actions or omissions giving rise to the motion for a default judgment are the result of excusable neglect on the part of the non-moving party; and (8) whether the grounds offered for the entry of a default judgment are clearly established.

*Hummel*, 868 F. Supp. 2d at 548; *see also* 10A *Wright & Miller's Federal Practice and Procedure* § 2685 (4th ed. 2024).

If the plaintiff is seeking "a sum certain or a sum that can be made certain by computation," the plaintiff can request that the clerk enter judgment and provide an affidavit showing the amount due. Fed. R. Civ. P. 55(b)(1). So long as the defendant "has been

defaulted for not appearing" and "is neither a minor nor an incompetent person," the clerk

"must enter judgment" in favor of the plaintiff for the sum certain supported by the affidavit.

*Id.*

If the amount requested by the plaintiff is not a "sum certain," the entry of a default

judgment rests with the sound discretion of the court. *Moradi*, 673 F.2d at 727; *Hummel*, 868

F. Supp. 2d at 548; *see* Fed. R. Civ. P. 55(b)(2). "If there is a sufficient basis for the judgment,

then the court must make an independent determination regarding damages." *Shelton v.

Marshall*, 724 F. Supp. 3d 532, 540 (W.D. Va. 2024) (cleaned up). A court may hold a hearing

to determine damages or any other issues necessary for its judgment, but it is not required to

do so. *See* Fed. R. Civ. P. 55(b)(2); *Timilon Corp. v. Empowerment Just. Ctr. Corp.*, 738 F. Supp.

3d 669, 679 (D. Md. 2024).

### III.    Analysis

Peruvian failed to participate in this litigation, and its failure to defend this action does

not appear to be based on any good-faith mistake or excusable neglect. Ramirez's grounds

offered for the entry of default are clearly established, and there is a relatively unremarkable

amount of money involved in the litigation. Ramirez has been prejudiced by Peruvian's

actions, and there are no material issues of fact needing resolution. With that said, the court

finds that default judgment in Ramirez's favor is warranted and will proceed to analyze the

relief he is entitled to.

### A. TILA Violations (Count 5)

1. <u>Liability</u>

Ramirez has alleged facts sufficient to establish Peruvian's liability under TILA. A "creditor" as defined by TILA is:

> [A] person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 U.S.C. § 1602(g). Ramirez alleges that Peruvian "regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments and was initially payable" to Peruvian, making them a "creditor" under TILA. (Am. Compl. ¶ 91.)

As a creditor under TILA, Peruvian is obligated to "disclose a long list of items" before the credit is extended pursuant to 15 U.S.C. § 1638(a). *Hummel*, 868 F. Supp. 2d at 548–49. TILA requires these disclosures of terms of dealing—like finances charges, APRs, and amount financed—to be accurate and clear. *See Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998). Ramirez alleges that Peruvian incorrectly stated the amount financed, finance charge, and the APR on the RICSA. (Am. Compl. ¶ 19.) These errors flowed from misstatements of the cash price of the vehicle and the down payment on the RICSA, which Peruvian allegedly explained were intentional misstatements "for paperwork purposes." (*Id.* ¶¶ 18, 20–21.)

Deeming Ramirez's allegations as admitted, he has established Peruvian's liability under TILA on Count 5. Ramirez sufficiently alleged that (1) Peruvian was a creditor who regularly

extended consumer credit; (2) Ramirez was in debt to Peruvian; and (3) that Peruvian failed to comply with TILA's disclosure requirements. *See, e.g., James v. Delta Motors, LLC*, 672 F. Supp. 3d 155, 161–62 (W.D. Va. 2023) (finding TILA liability based on the same factors in the default judgment context).

### 2. Damages

Any creditor that fails to comply with TILA's disclosure requirements may be liable to a plaintiff for actual and statutory damages. *See* 15 U.S.C. § 1640(a). Ramirez claims $117.52[4] in actual damages due to Peruvian's overstatement of the sales tax on the car. (Dkt. 50-1 at 6.) Regardless, Ramirez does not show that this TILA violation—overstating the sales tax—caused him to pay more for the car.[5] Ramirez fails to allege any other facts to suggest that Peruvian's TILA violations caused him pay more or otherwise injured him in any way. The court therefore finds that Ramirez is not entitled to actual damages under TILA. *See Hodges v. Koons Buick Pontiac GMC, Inc.*, 180 F. Supp. 2d 786, 792 n. 6 (E.D. Va. 2001) ("To recover actual damages, the plaintiff must show a real loss or injury proximately caused by the defendant's TILA violation.")

Ramirez also requests statutory damages available under TILA, (Dkt. 50-1 at 6–7), which he may be entitled to even if he does not show actual damages. *See Kittrell v. RRR, L.L.C.*, 280 F. Supp. 2d 517, 520 (E.D. Va. 2003). In an individual action, a creditor who

---

[4] In his amended complaint, Ramirez claims $172.23 in actual damages. (Am. Compl. at 15.) He attributes the discrepancy to a math error in the amended complaint. (Dkt. 50-1 at 5 n.1.)

[5] Ramirez highlights a misstatement on paper, which the court accepts as true. But Ramirez does not allege how the misstatement caused him to pay more for the car. The court agrees that the sales tax appears to be higher on the RICSA ($787.70) than it should have been under Virginia law ($670.18), but that discrepancy is negated, at a minimum, by the accompanying $4,250 overstatement of the down payment on the RICSA ($5,950) compared to the Buyer's Order ($1,700). (*See* Buyer's Order; RICSA at 1.)

violates TILA is liable for "twice the amount of any finance charge in connection with the transaction." 15 U.S.C. § 1640(a)(2)(A)(i); *Shelton*, 724 F. Supp. 3d at 545. In this action, which is "an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling," the damage amount is confined to a range of "not less than $400 or greater than $4,000." 15 U.S.C. § 1640(a)(2)(A)(iv). The finance charge listed on the RICSA is $7,249.42. Ramirez asks for $2,000 in statutory damages. (Am. Compl. at 15; Dkt. 50-1 at 7.) Since the request is within the statutory range, the court will award Ramirez $2,000 in statutory damages under TILA against Peruvian.

### B. VCPA Violations (Count 6)

Ramirez has not established liability under the VCPA. The VCPA provides protection for consumers who are defrauded "by a supplier in connection with a consumer transaction." Va. Code Ann. § 59.1-200. But "[t]he VCPA does not apply to 'those aspects of a consumer transaction that are regulated by the Federal Consumer Credit Protection Act,' of which TILA forms part." *James*, 672 F. Supp. 3d at 162 (quoting Va. Code Ann. § 59.1-199(C)). "The alleged violations that fall within TILA's reach are therefore inadequate bases for VCPA relief." *Id.* at 163. Ramirez's claims that Peruvian misrepresented various line items on the RICSA in violation of Virginia Code § 59.1-200(A)(14), (*see* Am. Compl. ¶¶ 107–113), "are all so closely linked to the consumer credit transaction that recovery is unavailable under the VCPA." *James*, 672 F. Supp. 3d at 163. Accordingly, the court finds Ramirez has not established his claim for relief under the VCPA.

## C. Attorney's Fees

Ramirez asks the court to award attorney's fees for this matter. (Am. Compl. at 15; Dkt. 50-1 at 7–9.) As a successful plaintiff in a TILA action, Ramirez is entitled to recover reasonable attorney's fees from Peruvian under 15 U.S.C. § 1640(a)(3). TILA does not require a showing of actual damages in order for attorney's fees to be awarded. *See Kittrell*, 280 F. Supp. 2d at 520 n.6.

Ramirez's counsel itemizes 2.6 hours of legal work at a $400 rate, for a total lodestar amount of $1,040. Ramirez supports the reasonableness of this rate with several declarations from undersigned counsel and experienced counsel practicing in this district. (*See* Dkts. 50-3, 50-4, 50-5, 50-6.) Upon reviewing the declarations, the court finds that Ramirez has carried his "burden of showing that the claimed rate and number of hours are reasonable," *James*, 672 F. Supp. 3d at 166 (cleaned up), and will award attorney's fees of $1,040.

## IV.    Conclusion

For the foregoing reasons, the court will grant Ramirez's motion for default judgment, (Dkt. 50). Judgment will be entered in favor of Ramirez and against Peruvian in the amount of $3,040—representing $2,000 in statutory damages under TILA and $1,040 in attorney's fees—plus post-judgment interest that will accrue pursuant to 28 U.S.C. § 1961.

An appropriate Order will issue.

**ENTERED** this 7th day of April, 2026.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE

- 9 -